**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re                                                             :
                                                                  :   Chapter 11
GEMINI SYSTEMS, LLC,                                              :
                                                                  :   Case No. 15-10574 (SHL)
                                      Debtor.                     :
------------------------------------------------------------------x

**ORDER AUTHORIZING AND APPROVING (I) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (II) THE PROCEDURES GOVERNING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS; AND (III) RELATED RELIEF[1]**

Upon the motion of the above-captioned debtor (the "**Debtor**"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Federal Rules of Bankruptcy Procedure 2002, 6004, 6006, 9007 and 9014 (the "**Bankruptcy Rules**"), for entry of an order authorizing and approving, among other things, the sale of substantially all of the Debtor's assets to ETG/GEM, Inc., a wholly owned subsidiary of Essex Technology Group, Inc. (formerly known as ETGI, Inc.) (the "**Purchaser**") free and clear of all liens, Claims and Encumbrances (as defined below), the assumption and assignment of the Assigned Contracts (as defined below), and related relief (Docket No. 22) (as amended, the "**Motion**");[2] and the Order Approving Bid Procedures and Providing Certain Bid Protections to Purchaser and Granting Related Relief (Docket No. 36) (the "**Bid Procedures Order**"); and it appearing that due and appropriate notice of the Motion, the Bid Procedures Order, the Bid Procedures, the Auction and the Sale Hearing having been given; and it appearing that no other notice of the relief granted by this Order need be given; and there having been no objections filed to the Motion; and the Court having conducted a hearing on the Motion on April 29, 2015 (the "**Sale Hearing**") at which time

---

[1] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when appropriate. *See* FED. R. BANKR. P. 7052.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion or the Purchase Agreement (as defined below). A copy of the Purchase Agreement was attached as Exhibit C to the Motion. A copy of the Amended and Restated Purchase Agreement, dated April 28, 2015, was filed on April 28, 2015 (Docket No. 50).

1

all interested parties were offered an opportunity to be heard with respect to the Motion; and the Debtor having conducted a marketing process in compliance with the Bid Procedures Order and determined that the Purchaser has submitted the highest and best bid for the assets of the Debtor that the Purchaser has offered to purchase as more specifically described in the Purchase Agreement between the Debtor, the Purchaser, Essex Technology Group, Inc. ("**Essextec**") and Simon Leung (the "**Owner**"), dated as of March 11, 2015, and as Amended and Restated on April 28, 2015 (the "**Purchase Agreement**") and (the "**Assets**"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding entry of this Order and approval of the sale of substantially all of the Debtor's assets to the Purchaser and assumption and assignment of certain contracts (the "**Sale Transaction**") and Purchase Agreement; and this Court being fully advised; this Court, based upon the ~~arguments,~~ testimony and evidence presented to it, including the Debtor's proffer at the Sale Hearing, hereby makes the following findings of fact and conclusions of law:

  A.  This Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

  B.  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

  C.  This proceeding is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O).

D.	The statutory predicates for the Motion are sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

E.	As evidenced by the affidavits of service filed with the Court, and based upon the representations of counsel at the Sale Hearing, (i) proper, timely and adequate notice of the Motion, the Bid Procedures Order, the Sale Hearing, the Sale Transaction, the Auction and the Bid Deadline as approved herein has been provided in accordance with Bankruptcy Rules 2002, 6004, 9007 and 9014, (ii) such notice was good, sufficient and appropriate under the circumstances and (iii) no other or further notice of the Motion, the Bid Procedures Order, the Sale Hearing, the Sale Transaction, the Auction or the Bid Deadline as provided herein is necessary or shall be required.

F.	A reasonable opportunity to object or be heard with respect to the Motion and the Sale Transaction has been afforded to all interested persons and entities, including, without limitation: (i) the U.S. Trustee, (ii) counsel for the Purchaser, (iii) the Internal Revenue Service, (iv) New York State Department of Taxation and Finance, (v) New York City Department of Finance, (vi) each of the Debtor's secured creditors, or their counsel if known, (vii) all parties who are known to assert a Lien on the Assets, (viii) all parties that have filed a request for notice of pleadings in this case, (ix) the United States' Attorney's Office and (x) all other parties who filed requests for notice under Bankruptcy Rule 2002 in this case.

G.	Notice, as specified in the preceding paragraph and as evidenced by the affidavits of service filed with the Court, has been provided in the form and manner specified in the Motion and required by the Bid Procedures Order, and such notice is reasonable and adequate.

H.	The sale process for the Assets was conducted in accordance with the Bidding Procedures Order. Because there were no Qualified Bids (other than that submitted by

3

Purchaser) received by the Bid Deadline, the Debtor was not required to conduct an Auction and instead proceeded with the consummation of the Purchase Agreement.

I.  The Purchaser is purchasing the Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision.

J.  The Purchase Agreement was negotiated, proposed and entered into by the Debtor and the Purchaser without collusion, in good faith and from arms' length bargaining positions. Neither the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the Sale Transaction or any part of the transactions contemplated by the Purchase Agreement to be avoidable under section 363(n) of the Bankruptcy Code.

K.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtor afforded interested potential purchasers a full and fair opportunity to qualify as Qualified Bidders under the Bidding Procedures and to submit an offer for the Assets.

L.  The Purchaser is not an "insider" of any of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.

M.  The consideration provided by the Purchaser for the Assets pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Assets, (iii) will provide a greater recovery for all of the Debtor's stakeholders than would be provided by any other practical available alternative and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act and all other applicable laws.

N.     The Debtor has demonstrated a sufficient basis and compelling circumstances requiring the Debtor to enter into the Purchase Agreement and sell the Assets under section 363 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtor's business judgment and are in the best interests of the Debtor, the estate, and its creditors.

O.     The marketing and bidding processes implemented by the Debtor and its advisors, as set forth in the Motion, were fair, proper, and reasonably calculated to result in the best value received for the Assets.

P.     The Debtor has full authority and power to execute and deliver the Purchase Agreement and related agreements and all other documents contemplated by the Purchase Agreement, to perform its obligations therein and to consummate the Sale Transaction. Except as set forth in the Purchase Agreement, no additional consents or approvals are necessary or required for the Debtor to enter into the Purchase Agreement, perform its obligations therein and consummate the Sale Transaction.

Q.     The Purchaser would not have entered into the Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtor, the estate, and its creditors, if the Assets were not sold to it free and clear of all Claims and Encumbrances or if the Purchaser would, or in the future could, be liable for any Claims and Encumbrances against the Assets.

R.     Selling the Assets free and clear of any and all liens, claims (as defined in section 101(5) of the Bankruptcy Code), security interests, mortgages, encumbrances, obligations, including employee benefit obligations charges against or interests in property, adverse claims, claims of possession, rights of way, licenses, easements or restrictions of any kind, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions,

5

limitations, contractual commitments, rights of first refusal, rights of setoff or recoupment, or interests of any kind or nature whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of this chapter 11 case, whether imposed by agreement, understanding, law, equity or otherwise, subject to applicable law, including section 363 of the Bankruptcy Code (collectively, the "**Claims and Encumbrances**") would adversely impact the Debtor's estate, and the sale of the Assets other than as free and clear of all Claims and Encumbrances would be of substantially less value to the Debtor's estate.

S. The provisions of section 363(f) of the Bankruptcy Code have been satisfied. All holders of Claims and Encumbrances, if any, who did not object, or withdrew their objections to the Sale Transaction, are deemed to have consented to the Sale Transaction. Further, the proceeds of the Sale Transaction exceed the amount of any lien on the Assets.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AS FOLLOWS:**

1. The relief requested in the Motion is granted and approved in all respects, as set forth herein. The Debtor's entry into the Purchase Agreement and the Sale Transaction is hereby approved in all respects. Except as may be expressly provided herein, objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits.

2. The Debtor is authorized and directed to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction in accordance with the Motion, the Purchase Agreement and this Order, and (b) perform, consummate, implement and close fully the Sale Transaction, together with all additional instruments and documents that may be reasonably

6

necessary or desirable to implement the Purchase Agreement including, without limitation, consenting to the assignment by the Purchaser of any of its rights under or relating to the Purchase Agreement.

3. Those holders of Claims and Encumbrances and other non-Debtor parties who did not object to entry of this Order, the Motion, the Bid Procedures Order, the Sale Hearing, the Sale Transaction and the Purchase Agreement are deemed to have consented to this Order, the Bidding Procedures Order, the Sale Transaction and the Purchase Agreement pursuant to section 363(f)(2) of the Bankruptcy Code and are enjoined from taking any action against the Purchaser, its successors, its assigns, its representatives, its affiliates, its properties, or any agent of the foregoing to recover any claim which such person or entity has against the Debtor or any of its affiliates or any of the Debtor's property.

**Sale and Transfer of the Acquired Assets**

4. Upon Closing, the Assets transferred, sold and delivered to the Purchaser shall be free and clear of all Claims and Encumbrances of any person or entity. The transfer of the Assets to the Purchaser constitutes a legal, valid and effective transfer of the Assets and shall vest the Purchaser with all right, title and interest in and to the Assets.

5. Upon closing of the Sale Transaction, this Order shall be construed as, and shall constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Assets pursuant to the terms of the Purchase Agreement.

6. The Sale Transaction shall be free and clear of any and all transfer, sales, use, excise or any other related tax.

7. Effective on the Closing, all entities, including, but not limited to, the Debtor, creditors, employees, former employees and shareholders, administrative agencies, tax and

7

regulatory authorities, governmental departments, secretaries of state, federal, state and local officials, and their respective successors or assigns, including, but not limited to, persons asserting any Claims or Encumbrance against the Debtor's assets, shall be permanently and forever barred, restrained and enjoined from commencing, pursuing, prosecuting or otherwise continuing in any manner any action or other proceeding of any kind against the Assets or the Purchaser (or its successors, assigns, agents or representatives) as alleged successor or otherwise with respect to any Claims and Encumbrances on or in respect of the Assets.

　　　　8.　　Each and every term and provision of the Purchase Agreement, together with the terms and provisions of this Order, shall be binding in all respects upon all entities, including, but not limited to the Debtor, the Purchaser, creditors, employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and their respective successors or assigns, including but not limited to persons asserting any Claim or Encumbrance against or interest in the Debtor's estate or the Debtor's assets, including any subsequent appointment of a trustee or other fiduciary under any section of the Bankruptcy Code.

　　　　9.　　Upon the Closing, all entities holding Claims and Encumbrances of any kind and nature against the Debtor's assets hereby are barred from asserting such Claims and Encumbrances against the Purchaser (or its successors, assigns, agents or representatives) and/or the Assets and, effective upon the transfer of the Assets to the Purchaser upon Closing, the Claims and Encumbrances shall attach to the proceeds of the Sale Transaction with the same force, validity, priority and effect, if any, as against the Debtor's assets.

　　　　10.　　This Order (a) is and shall be effective as a determination that, upon Closing, all Claims and Encumbrances existing as to the Debtor's assets conveyed to the Purchaser have

8

been and hereby are adjudged to be unconditionally released, discharged and terminated, with all such Claims and Encumbrances attaching automatically the proceeds in the same manner and priority, and (b) shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Debtor's assets conveyed to the Purchaser.  All Claims and Encumbrances of record as of the date of this Order shall be removed and stricken as against the Assets in accordance with the foregoing.  All entities are authorized and specifically directed to strike all such recorded Claims and Encumbrances against the Assets from their records, official or otherwise.

11. If any person or entity which has filed financing statements, mortgage, *lis pendens* or other documents or agreements evidencing Claims and Encumbrances on the Assets shall not have delivered to the Debtor prior to closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements and any other documents necessary for the purpose of documenting the release of all Claims and Encumbrances which the person or entity has or may assert with respect to the Assets, the Debtor is hereby authorized and directed upon closing, and the Purchaser is hereby authorized upon closing, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets.  Upon closing of the Sale Transaction, each of the Debtor's creditors is authorized and directed to execute such

documents and take all such actions as may be necessary to release their respective Claims and Encumbrances against the Assets.

12.    The Sale Transaction does not make the Purchaser a successor to the Debtor or its estate, or subject the Purchaser or its property to any liability for claims against the estate under a theory of successor liability, *de facto* merger, alter ego liability, mere continuation or any similar theory.  Except as specifically provided in the Purchase Agreement or this Order, and consistent with section 363(f) of the Bankruptcy Code, the Purchaser shall have no liability for any claims, known, unknown or contingent, arising out of or related to the Sale or transfer of the Assets, or arising from known, unknown or contingent claims against the Debtor or its estate, or any liabilities or obligations of the Debtor and/or its estate under the laws of the United States, any state, territory, or possession thereof, based in whole or in part, directly or indirectly, in any theory of law or equity, including, without limitation, any laws affecting antitrust, ERISA, successor, transferee or vicarious liability.

**Assumption and Assignment of Contracts**

13.    At or before the Closing, the Purchaser shall provide (i) documentation identifying Contracts the Purchaser wishes to be assumed by the Debtor and assigned by the Debtor to the Purchaser (the "**Assigned Contracts**"); and (ii) all Contracts that the Purchaser will not be seeking to be assigned by the Seller (the "**Excluded Contracts**").  At any time prior to the Closing, the Purchaser shall have the right to re-designate any Assigned Contract as either an Assigned Contract or an Excluded Contract.  The Debtor agrees not to reject any Contract on or before the 30th day following the Closing without the Purchaser's prior consent.  The Debtor shall have thirty (30) days after the Closing Date to determine whether to assume and assign or reject all other executory contracts not expressly assumed and assigned or rejected as of the

10

Closing Date. Thereafter, any executory contracts not expressly assumed by the Debtor shall be deemed rejected. The Debtor shall assume in the Bankruptcy Case and assign to the Purchaser, any Assigned Contract (and any Contract that the Purchaser designated after the Closing), provided that the Purchaser shall pay all scheduled and disclosed cure amounts in connection with such assumption, and assign said Assigned Contracts to the Purchaser. The Debtor shall use best efforts to seek assumption and assignment of any Contracts designated prior to and after the Closing and obtain an order of the Court authorizing such assumptions and assignments.

14.     In order to effectuate the assumption and assignment to the Purchaser of any Assigned Contract, the Debtor shall file a copy of the Schedule of Assigned Contracts (the "**Assumption Schedule**") with the Court and shall concurrently serve notice of such schedule upon all counterparties to the Assigned Contracts and the Notice Parties. The Assumption Schedule shall identify the proposed Assigned Contracts and the corresponding Cure Amounts required under section 365 of the Bankruptcy Code, if any. *The Debtor shall file a separate list of vendors who have such contracts, and a separate list for customers*. All non-Debtor parties to the Assigned Contracts shall have until the tenth day after the date on which the Assumption Schedule is filed on the Court's docket *and served by overnight mail* to file an objection (an "**Assumption Objection**") to the assumption and assignment of the Assigned Contracts to which they are parties, or to the Cure Amounts listed for those Assigned Contracts. Any party filing an Assumption Objection shall state with specificity the basis of the objection and asserted Cure Amount, and shall include appropriate documentation in support thereof.

15.     If an Assumption Objection is timely filed and not consensually resolved, this Court may hold a hearing with respect to the Assumption Objection either at the Sale Hearing or at such other date as this Court shall designate. If the Assumption Objection relates only to the Cure Amount of an Assigned Contract, that Assigned Contract may be assumed by the Debtor and assigned to

11

Purchaser or the Successful Bidder(s), as applicable; provided, however, that the amount asserted by the objecting party as the proper Cure Amount, or a different amount set by this Court, shall be held in escrow pending further order of this Court or mutual agreement of the parties as to the proper Cure Amount for that Assigned Contract. The Debtor and Purchaser are hereby authorized to settle, compromise or otherwise resolve any disputed Cure Amounts with the relevant non-Debtor party to any Assigned Contract without Court approval or notice to any party.

16. **If no Assumption Objection is timely filed and served, then the Cure Amounts set forth in the Assumption Schedule shall control notwithstanding any terms or conditions to the contrary in any Assigned Contract, and the Assigned Contract shall be deemed to be assumed and assigned on the date on which Cure Amount is paid. The non-Debtor parties to the Assigned Contracts shall be barred from asserting against the Debtor or the Purchaser, any other claim arising from the Assigned Contracts.**

17. ~~The effective date of any assumption and assignment of any Assigned Contract shall be the date on which the Sale closes.~~ Any Cure Amounts to be paid under any Assigned Contract shall be paid by the Purchaser either prior to, upon or promptly following the closing of the Sale, or as otherwise agreed to by the parties to the Assigned Contract.

**Additional Provisions**

18. The provisions of this Order and the Purchase Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered (a) confirming or consummating any plan of reorganization of the Debtor, (b) converting the Debtor's case from chapter 11 to chapter 7, (c) dismissing the Debtor's bankruptcy case or (d) appointing a chapter 11 trustee or examiner, and the terms and provisions of the Purchase Agreement as well as the rights and interests granted pursuant to this Order and the Purchase Agreement shall continue in

this or any superseding case and shall be binding upon the Debtor, the Purchaser, and their respective successors and permitted assigns.

19. The Debtor shall assign to the Purchaser any claim and cause of action related to the Assets, including, without limitation, (i) those arising under chapter 5 of the Bankruptcy Code, and (ii) those related to any employee, independent contractor, or vendor with which the Purchaser will continue to perform business, or related to any Assigned Contract, excluding those claims relating to any of the Debtor's insiders (as insider is defined under Section 101(31) of the Bankruptcy Code).

20. Each and every federal, state, and governmental agency or department and any other person or entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

21. Nothing contained in any order of any type or kind entered in this chapter 11 case or any related proceeding subsequent to entry of this Order, nor in any chapter 11 plan confirmed in this chapter 11 case, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order. Further, the provisions of this Order and any actions taken pursuant hereto shall survive the entry of an order confirming any plan of reorganization or liquidation for the Debtor, the conversion of the Debtor's case from chapter 11 to a case under chapter 7 of the Bankruptcy Code or the dismissal of the Debtor's bankruptcy case. In any plan of reorganization or liquidation or otherwise, the Debtor shall not make any statement, take any position or perform any act that supports an argument that the Purchaser assumed debt or obligations that are not expressly assumed under the Purchase Agreement or this Order.

22. To the extent, if any, anything contained in this Order conflicts with a provision in the Purchase Agreement, this Order shall govern and control.

23. The Purchaser is purchasing the Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision. The consideration provided by the Purchaser for the Assets is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code or any other applicable provision of the Bankruptcy Code.

24. This Court retains jurisdiction, even after conversion of this chapter 11 case to a case under chapter 7, to (a) interpret, implement and enforce the terms and provisions of this Order (including any injunctive relief provided in this Order) and the terms of the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith; (b) protect the Purchaser (and its successors, assigns, agents and representatives) and the Assets from and against any of the Claims and Encumbrances; (c) resolve any disputes arising under or related to the Purchase Agreement or the Sale Transaction; (d) adjudicate all issues concerning (alleged) pre-Closing Claims and Encumbrances and any other (alleged) interest(s) in and to the Debtor's assets, including the extent, validity, enforceability, priority and nature of all such (alleged) Claims and Encumbrances and any other (alleged) interest(s); and (e) adjudicate any and all issues and/or disputes relating to the Debtor's right, title or interest in the Debtor's assets, the Motion and/or the Purchase Agreement.

25. From and after the date hereof, the Debtor shall act in accordance with the terms of the Purchase Agreement and the Debtor, to the extent they have not already done so, shall execute the Purchase Agreement at or prior to Closing.

26. Effective upon the occurrence of the Closing, the Debtor is authorized and directed to use the proceeds from the Sale Transaction to pay to Citibank, N.A., the United States Internal Revenue Service, New York State Department of Taxation and Finance, New York City Department of Finance, and each of the Debtor's other secured creditors (to the extent any others exist), an amount in cash sufficient to satisfy such parties existing lien on the Debtor's assets. Such payments shall be made by the Debtor promptly after the Closing.

27. This Order constitutes an authorization of conduct by the Debtor and nothing contained herein shall be deemed to constitute a ruling with regard to the sovereign immunity of any state. The failure of any state to object to the entry of this Order shall not operate as a waiver with respect thereto.

28. This Order and the Purchase Agreement shall be binding in all respects upon all creditors (whether known or unknown) of the Debtor, all successors, affiliates, subsidiaries and assigns of the Purchaser, the Debtor and its affiliates, subsidiaries and assigns, the Debtor's assets, and any subsequent trustees appointed in the Debtor's chapter 11 case or in any chapter 7 case or upon (a) a conversion of this chapter 11 case to a case under chapter 7 or (b) dismissal of the Debtor's bankruptcy case.

29. The failure specifically to include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that the Purchase Agreement and each and every provision, term and condition thereof be, and therefore is, authorized and approved in its entirety.

30. The provisions of this Order are non-severable and mutually dependent.

31. The automatic stay of section 362(a) of the Bankruptcy Code shall not apply to and otherwise shall not prevent the exercise or performance by any party of its rights or

obligations under the Purchase Agreement, including, without limitation, with respect to any cash held in escrow pursuant to the provisions thereof.

32. This Sale Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(g), 6004(h), 6006(d), 7062, or otherwise.

Dated: New York, New York
      May 4, 2015

                                          ***/s/ Sean H. Lane***
                                          United States Bankrutpcy Judge