**Hearing Date: June 29, 2015 at 2:00 p.m.**
**Objection Deadline: June 22, 2015 at 5:00 p.m.**

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
570 Seventh Avenue, 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy L. Klestadt
Brendan M. Scott

*Attorneys for the Debtor and Debtor in*
 *Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
In re                                              :
                                                   :    Chapter 11
GEMINI SYSTEMS, LLC,                               :
                                                   :    Case No. 15-10574 (SHL)
                          Debtor.                  :
---------------------------------------------------------------------x

**DEBTOR'S MOTION PURSUANT TO SECTIONS 105(A), 305(A), AND 1112(B) OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER APPROVING PROCEDURES FOR (A) THE DISTRIBUTION OF CERTAIN FUNDS, (B) THE DISMISSAL OF THE DEBTOR'S CHAPTER 11 CASE, AND (C) GRANTING CERTAIN RELATED RELIEF**

TO:   THE HONORABLE SEAN H. LANE,
      UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtor and debtor-in-possession (the "Debtor") hereby submits this motion (the "Motion") requesting entry of an order, pursuant to sections 105(a), 305(a), and 1112(b) of the Bankruptcy Code, (a) approving procedures for the distribution of certain funds, (b) the dismissal of the Debtor's chapter 11 case, and (c) granting certain related relief. In support of the Motion, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1.    The Motion is respectfully submitted to this Court in order to bring closure to this case. The chapter 11 case was successful insofar as the Debtor's business was sold, many of the

Debtor's employees jobs were preserved, secured creditors' claims were paid in full, ;and claims of various creditors pursuant to executory contracts were satisfied upon assumption. The bankruptcy estate has been fully administered. Unfortunately, there are insufficient assets available to satisfy all priority wage and tax claim claims in full, and thus the Debtor cannot confirm a plan of liquidation. Accordingly, the Debtor submits that the within Motion represents the most cost-effective way to distribute the Debtor's remaining assets.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. 157 and 1334. Venue of this case is proper in this district pursuant to 28 U.S.C. 1408 and 1409. The statutory predicates for the relief sought herein are sections 363, 365 and 1146 of the Bankruptcy Code and rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

The Chapter 11 Case

3.      On March 11, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.      Until May 8, 2015, the Debtor had operated its business and managed its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this Motion, no trustee, examiner or committee has been requested or appointed.

Pre-Petition Secured Indebtedness

i.      Citibank, N.A.

5.      Pursuant to the terms of certain Credit Approval Letter, dated January 13, 2012, Citibank agreed to open a secured line of credit in the amount of $750,000 for the Debtor.

6.      To secure the obligations to Citibank, the Debtor granted to Citibank liens and security interests (the "Prepetition Citibank Liens") against substantially all of the Debtor's assets ("Citibank Prepetition Collateral").

ii.     Internal Revenue Service

7.      The Internal Revenue Service ("IRS") had asserted certain liens against the Debtor in aggregate amount of $1,036,631.37 in relation to unpaid employment taxes. As a result, the IRS held a security interest ("Prepetition IRS Liens") against substantially all of the Debtor's assets ("IRS Prepetition Collateral").

iii.    New York State Department of Taxation and Finance

8.      The New York State Department of Taxation and Finance ("NYS Tax and Finance") had asserted certain liens against the Debtor in aggregate amount of $58,569.06 in relation to unpaid employment taxes. As a result, NYS Tax and Finance held a security interest ("Prepetition NYS Tax and Finance Liens") against substantially all of the Debtor's assets ("NYS Tax and Finance Prepetition Collateral").

iv.     City of New York Department of Finance

9.      The City of New York Department of Finance ("NYC Finance") held filed a tax warrant against the Debtor in amount of $868.21 in relation to unpaid New York City taxes.

v.      Essex Technology Group, Inc.

10.     Pursuant to the terms and condition of that certain Transition Agreement by and between the Debtor and Essex Technology Group, Inc. ("Essextec", and together with Citibank, IRS, NYS Tax and Finance and NYC Finance, the "Prepetition Secured Creditors"), dated April 16, 2014, as amended ("Transition Agreement"), and that certain Security Agreement, dated August 20, 2014 between the Debtor and Essextec ("Essextec 2014 Security Agreement"),

Essextec agreed to fund the services of certain of the Debtor's employees, provide limited back office services, and advance the Debtor moneys to fund expenses related to permanent residency (green card) applications and H-IB temporary work visas for certain employees.

11.     Pursuant to the terms and condition of that certain Amendment to Transition Agreement by and between the Debtor and Essextec, dated March 6, 2015 ("Amended Transition Agreement"), Essextex agreed to increase the lending cap set forth in the Transition Agreement and made additional loan advances to the Debtor.

12.     Pursuant to certain Promissory Notes, dated as of March 6, 2015, and March 10, 2015 and that certain Security Agreement, dated March 6, 2015, as amended on March 10, 2015, between the Debtor and Essextec ("Essextec 2015 Security Agreement"), Essextec agreed to loan additional funds to the Debtor to be used to fund attorney and financial advisor retainers for the Debtor's Prepetition professionals and to fund certain operating costs.

13.     To secure the obligations to Essextec, the Debtor granted to Essextec liens and security interests (the "Essextec Prepetition Liens") in substantially all of the Debtor assets, including but not limited to accounts, chattel paper, intellectual property, fixtures, inventory, and contract rights, including proceeds and products of all of the foregoing (the "Essextec Prepetition Collateral", and together with the Citibank IRS and NYS Tax and Finance, the "Prepetition Collateral"). Certain of the Prepetition Collateral constitutes cash collateral (the "Cash Collateral") within the meaning of section 363(a) of the Bankruptcy Code.

14.     As of the Petition Date, Essextec had made loan advances totaling approximately $800,000, which had not been repaid by the Debtor.

4

Cash Collateral and DIP Financing.

15.    Pursuant to the Secured Debtor in Possession Credit Agreement, dated as of March 11, 2015, among the Debtor, and Essextec, as the lender ("DIP Lender"), DIP Lender made post-petition loans to and for the benefit of the Debtor subsequent to the Petition Date (the "DIP Loan"). To secure the DIP Loan, the Debtor granted liens and security interests to the DIP Lender upon and in substantially all of the Debtor's assets and property (the "DIP Collateral"), including all of the Debtor's cash (the "Cash Collateral").

16.    Moreover, as of the Petition Date, the Debtor had limited sources of working capital and financing to carry on the operations of their businesses without the use of the Cash Collateral. Accordingly, on the Petition Date, in cooperation with the DIP Lender, the Debtor sought authority to use the Cash Collateral and to grant the Prepetition Secured Creditors adequate protection for such use, including a superpriority administrative expense claim.

17.    On April 2, 2015, this Court entered a final order (the "Cash Collateral Order") authorizing the use of Cash Collateral and approving the DIP Loan to allow the Debtor to maintain the operation of its business during the course of the chapter 11 Case.

Sale of Substantially All of the Debtor's Assets.

18.    The Debtor filed a motion on March 11, 2015 (the "Sale Motion") seeking, among other things, approval of bidding procedures and the sale of substantially all of the Debtor's assets to Essextec, through its wholly owned subsidiary, ETG/GEM, Inc., subject to higher and better offers, pursuant to the terms of an asset purchase agreement, dated March 11, 2015, as amended and restated on April 28, 2015 (the "Asset Purchase Agreement"). No competing bids were received. After a hearing held on April 29, 2015 to consider approval of such sale and certain related relief, the Bankruptcy Court entered an order dated May 4, 2015

5

(the "Sale Order") approving the Asset Purchase Agreement and the assumption and assignment of certain contracts by the Debtor. The Debtor and ETG/GEM, Inc. consummated the closing under the Asset Purchase Agreement effective on May 8, 2015.

Distributions to Prepetition Secured Creditors

19. In accordance with the terms of the Sale Order, on May 8, 2015, the Debtor distributed cash proceeds from the sale of its assets to the Prepetition Secured Creditors as follows:

   a. Citibank, N.A. - $768,512.02

   b. United States Treasury by Internal Revenue Service - $1,040,805.19

   c. New York State Department of Taxation and Finance - $58,769.06

   d. City of New York Department of Finance - $868.21

Appointment of Responsible Officer.

20. Upon the sale of the Debtor's assets to ETG/GEM, Inc., all of the Debtor's remaining employees ceased their employment with the Debtor. As a result, Simon Leung, the sole member of the Debtor, has assumed responsibility as the responsible officer of the Debtor.

Priority Tax Claims

21. The IRS has filed a proof of claim ("Claim No. 4") in the aggregate amount of $3,970,621.31, including a priority tax claim pursuant to 11 U.S.C. § 507(a)(8) in the amount of $3,555,644.13.

22. NYS Tax and Finance has filed a proof of claim ("Claim No. 5") in the amount of $820,378.09, including a priority tax claim pursuant to 11 U.S.C. § 507(a)(8) in the amount of $758,776.25.

23. The Debtor has insufficient cash on hand to satisfy the priority tax claims.

General Unsecured Claims

24. The following unsecured claims have been filed in the case:

- Claim No. 1 - Brendan Baker - $20,643.74

- Claim No. 2 - DataBP - $97,174.96

- Claim No. 3 - Mark Bird - $15,857.38

    *    *    *

    *    *    *

- Claim No. 6 - AT&T Mobility II LLC -  $7,906.77

- Claim No. 7 - American Express Travel Related
        Services Company, Inc., - $786,346.21

- Claim No. 8 - Arrow Enterprise Computing Solutions, Inc. - $1,159,056.71

- Claim No. 9 - IBM Credit LLC - $5,272.51

- Claim No. 10 - New York State Department of Labor - $20,340.70

- Claim No. 11 – Monster Worldwide Inc. - $10,709.18

- Claim No. 12 - American Express Bank, FSB - $7,686.16.

- Claim No. 13 - CIT Finance, LLC. dba Lenovo Financial Serv. - $4,378.30

- Claim No. 14 - CIT Finance, LLC. dba Lenovo Financial Serv. - $6,415.33

- Claim No. 15 - CIT Finance, LLC. dba Lenovo Financial Serv. - $8,694.77

- Claim No. 16 - CIT Finance, LLC. dba Lenovo Financial Serv. - $10,215.63

- Claim No. 17 - CIT Finance, LLC. dba Lenovo Financial Serv. - $7,461.78

25. In addition, Debtor has been made aware of a possible threatened claim relating to the termination of its former employee, Arthur Homewood. Mr. Homewood has threatened to initiate a lawsuit asserting claims for wrongful termination, breach of contract, hostile work

environment and employment discrimination against debtor as well as against Essex Technology Group, Inc. and its subsidiary ETG/GEM, Inc. (collectively "ETG/GEM"), as well as their principals, James Torney and Dennis Burke, under a theory of single employer or joint employer liability ("Homewood Claim"). Mr. Homewood was an employee of Debtor until March 10, 2015, when the Debtor terminated his employment. Mr. Homewood was at no time an employee of ETG/GEM, nor did ETG/GEM exercise control over Mr. Homewood or Debtor's decision to terminate Mr. Homewood. Debtor reserves all rights with respect to the Homewood Claim.

## RELIEF REQUESTED AND BASES THEREFOR

26. The Debtor requests that the Court dismiss this case. Granting the Motion will result in prompt resolution of the case, will minimize the burden on the Court and the parties of holding open the case and maximize the amount of distributions available to holders of administrative expense claims. The Debtor is not seeking a release with respect to claims asserted against it as part of the dismissal.

27. As of June 5, 2015, the Debtor has $122,618.21 in cash on deposit in the escrow account of Debtor's counsel. All of the Debtor's tangible assets have been liquidated. The Debtor has reviewed potential avoidance actions, to the extent not transferred to ETG/GEM, Inc in the Asset Purchase Agreement, and does not believe there are any other viable sources of recovery for the estate.

28. The Debtor is unaware of any other outstanding postpetition unsecured obligations other than the claims of professionals for unpaid fees ("Professional Fee Claims").

29. There is simply not enough cash left in the estate to satisfy the remaining unpaid priority tax claims entitled to priority under section 507(a)(8) of the Bankruptcy Code, let alone claims lower in priority under section 507 of the Bankruptcy code or general unsecured

8

claims. This financial landscape renders it practically and economically impossible to confirm a plan. The only two results left are dismissal of the case or conversion to chapter 7.

30. Conversion to chapter 7 benefits no creditor or other party in these cases. The remaining cash would be consumed to pay chapter 7 administrative expenses. All a chapter 7 conversion will do is further diminish funds available at this time to pay the remaining professional fee claims. There is nothing left for a chapter 7 trustee to do, as all of the estate's assets have been sold or fully administered.

31. Given that uniformly detrimental result, the Debtor believes a better solution is to dismiss this case while respecting the priority scheme of the Bankruptcy Code in the distribution of the remaining unencumbered funds in the estate.

32. The Debtor's professionals are filing contemporaneously herewith their respective final applications for allowance of compensation and reimbursement of expenses, which the parties will request be heard contemporaneously with the hearing on this Motion.

33. The Debtor's professionals are seeking payment of compensation and reimbursement of expenses in the following aggregate amounts:

- Klestadt Winters Jureller Southard & Stevens, LLP ("KWJSS")[1] -    $ 120,673.29
- Fairfield Forensic and Valuation Services, LLC ("FFVS")    $ 70,047.82
- Paritz & Company, P.A. -    $ 9,802.50

---

[1] KWJSS is currently holding a retainer in the amount of $30,124.17 and FVSS is holding a retainer in the amount of $6,349.98, which shall be applied against outstanding fees and expenses, pending issuance of a Court order approving such fees and expenses.

9

34. In order to effectuate the proposed dismissal, the Debtor needs to distribute the Debtor's remaining cash in accordance with the priority of claims under the Bankruptcy Code. Accordingly, assuming the Court were to grant the fee applications as requested, the distribution would be as follows:

<u>Administrative claims</u>

| | | |
|---|---|---|
| United States Trustee Fees ("<u>UST Fees</u>") | $ | **9,750** |

<u>Professional fee claims</u>

| | | |
|---|---|---|
| Klestadt Winters Jureller Southard & Stevens, LLP (Debtor's Attorneys) | $ | 120,673.29 |
| Less Retainer | $ | 30,124.17 |
| Net Claim | $ | <u>90,549.12</u> |
| Pro Rata Distribution | $ | **60,503** |
| | | |
| Fairfield Forensic Valuation Services, LLC (Debtor's Financial Advisor) | $ | 70,047.82 |
| Less Retainer | $ | 6,349.98 |
| Net Claim | $ | <u>63,697.84</u> |
| ProRata Distribution | $ | **42,562** |
| | | |
| Paritz & Company, P.A. (Debtor's Tax Accountant) | $ | <u>**9,802.50**</u> |
| | | |
| TOTAL | $ | 122,618 |

35. Each of the professionals listed above in paragraph 34 has consented to the distributions of the Debtor's property as set forth in paragraph 34. Specifically, KWJSS and FFVS have agreed to receive a pro rata distribution of the Debtor's available cash after

payment in full of UST Fees and the Paritz & Co., P.A. Professional Fee Claim ($103,065.71), such that KWJSS and FFVS will each receive a distribution in the amount of 66.82% of their net Professional Fee Claim.[2]

36. After the above distributions are made and as yet unpaid fees owing to the Office of the UST Fees have been paid, the Debtor asks that upon the filing of a certification of counsel, substantially in the form annexed hereto as Exhibit B, that the Court enter an order, substantially in form annexed hereto as Exhibit C (the "Dismissal Order").  The Certification of Counsel and Request for Dismissal will, among other things, (a) verify that all distributions have been made and reserves established, (b) confirm that all accrued UST Fees have been paid and (c) request entry of the Dismissal Order.

## APPLICABLE AUTHORITY

### A. Dismissal of This Case Under Section 1112(b) of the Bankruptcy Code

37. The Court should approve the Motion because the Debtor (a) lacks the financial ability to pay all administrative and priority wage creditors in full and therefore cannot satisfy the chapter 11 plan requirements of the Bankruptcy Code, and (b) has no remaining unencumbered estate assets to collect and administer.  For the reasons stated herein, the Debtor submits that authorization to make the proposed distributions outside of a plan of reorganization and in the context of an orderly dismissal of this chapter 11 case is justified and warranted under the circumstances.

38. Under section 1112(b) of the Bankruptcy Code, a court shall "convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter,

---

[2] Essextec has committed to pay up to $44,750 of the net Professional Fees Claims of KWJSS and FFVS in order to cover in part the $51,181.25 shortfall between the total net Professional Fees Claims of KWJSS and FFVS ($154,246.96) and the amount of Debtor's available cash after payment of UST Fees and the Paritz & Co., P.A. Professional Fee Claim ($103,065.71).

11

**whichever is in the best interests of creditors and the estates,** if the movant establishes cause." 11 U.S.C. §1112(b) (emphasis added); In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984); In re Blunt, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999). A determination of cause is made by the court on a case-by-case basis. Albany Partners, 749 F.2d at 674. The decision to dismiss or convert a case is particularly delegated to the bankruptcy court's sound discretion. See In re Camden Ordinance Mfg. Co. of Arkansas, Inc., 1999 WL 587790, at *2 (Bankr. E.D. Pa. 1999) (citing In re Atlas Supply Corp., 837 F.2d 1061, 1063 (5th Cir. 1988). Therefore, it is clear that the Court is authorized to dismiss the Debtor's chapter 11 case upon a showing of "cause."

39. The legislative history of section 1112(b) of the Bankruptcy Code and relevant case authority indicate that a court has wide discretion to use its equitable powers to dispose of a debtor's case. H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), *reprinted in* 1978 U.S.C.C.A.N. 57878; see also In re Preferred Door Co., 990 F.2d 547, 549 (10th Cir. 1993) (stating that a court has broad discretion to dismiss a bankruptcy case); In re Sullivan Cent. Plaza I, Ltd., 935 F.2d 723, 728 (5th Cir. 1991) (stating that a determination of whether cause exists under section 1112(b) of the Bankruptcy Code "rests in the sound discretion" of the bankruptcy court); In re Koerner, 800 F.2d 1358, 1367 & n.7 (5th Cir. 1986) (stating that a bankruptcy court is afforded "wide discretion" under section 1112(b) of the Bankruptcy Code); Albany Partners, 749 F.2d at 674 (same).

40. Section 1112(b) of the Bankruptcy Code provides a nonexclusive list of 16 grounds for dismissal. 11 U.S.C. § 1112(b)(4)(A)-(P); Frieouf v. U.S., 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that section 1112(b) of the Bankruptcy Code's list is

12

nonexhaustive); In re Blunt, 236 B.R. at 864 (same). One such ground is where a party-in-interest shows that there is an "inability to effectuate a plan [of reorganization]." 11 U.S.C. § 1112(b)(2)(A); Preferred Door Co., 990 F.2d at 549; Sullivan Cent. Plaza I, 935 F.2d at 728. Inability to effectuate a plan arises when a debtor lacks the capacity to "formulate a plan or carry one out" or where the "core" for a workable plan of reorganization "does not exist." See Preferred Door, 990 F.2d at 549 (quoting Hall v. Vance, 887 F.2d 1041, 1044 (10th Cir. 1989)) (finding an inability to effectuate a plan arises where debtor lacks capacity to formulate a plan or carry one out); In re Blunt, 236 B.R. at 865 (finding cause to dismiss debtor's case under section 1112(b)(2) of the Bankruptcy Code where "core" for a workable plan of reorganization found to be nonexistent). Accordingly, the Court may dismiss the Debtor's' chapter 11 case because the Debtor is unable to effectuate a plan.

41.    Here, it is simply not possible for the Debtor to confirm a chapter 11 plan because the Debtor has liquidated all of its assets, has no remaining assets to administer, and has insufficient funds to pay administrative expense and priority claims in full. All of the Debtor's assets have been sold and the Debtor is no longer operating. As such, there is no business to reorganize and there are insufficient funds to confirm a plan of liquidation. By continuing in bankruptcy, the Debtor would likely incur additional administrative expenses that would reduce creditor recoveries further. In sum, the Debtor has met its burden of proof to show that cause exists to dismiss this chapter 11 case under section 1112(b) of the Bankruptcy Code due to its inability to effectuate a plan of reorganization.

42.    Once a court determines that cause exists to dismiss a chapter 11 case, the court must also evaluate whether dismissal is in the best interests of the estate and creditors. See In re Superior Sliding & Window, Inc., 14 F.3d 240, 243 (4th Cir. 1994); In re Mazzocone, 183

13

B.R.402, 411 (Bankr. E.D. Pa. 1995), aff'd, 200 B.R. 568 (E.D. Pa. 1996); In re Warner, 83 B.R. 807, 809 (Bankr. M.D. Fla. 1988).  A variety of factors demonstrates that it is in the best interests of the Debtor's estate and creditors to dismiss this chapter 11 case and authorize the relief sought herein.

43. A dismissal of the Debtor's chapter 11 case meets the best interests of creditors test where a debtor has nothing left to reorganize and the debtor's assets are fixed and liquidated. See In re BTS, Inc., 247 B.R. 301, 310 (Bankr. N.D. Okla. 2000); In re Camden Ordinance Mfg. Co. of Arkansas. Inc., 245 B.R. 794, 799 (E.D. Pa. 2000) (finding that a reorganization to salvage a business which ceased doing business was not feasible); In re Brogdon Inv. Co., 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 case in part where there was "simply nothing to reorganize" and no reason to continue the reorganization). As noted above, the Debtor has nothing left to reorganize, as all of the Debtor's assets have been liquidated.

44. Additionally, dismissal of this chapter 11 case is warranted because the alternative - conversion to a chapter 7 case - would not serve the best interests of the Debtor's estate and creditors for the reasons discussed above.  One element of the best interest test focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy. In re Clark, 1995 WL 495951, at 5 (N.D. Ill. 1995); In re Staff Inv. Co., 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993).  The prime criterion for assessing the best interests of the estate is the maximization of value as an economic enterprise. See id.  Here, dismissal will maximize the value of the Debtor's estate because conversion to chapter 7 would impose substantial and unnecessary additional administrative costs upon the Debtor's estate with no hope that the estate

14

and creditors would receive more consideration than provided under this Motion. Simply put, there is nothing of benefit for a chapter 7 trustee to do here.

45.     Numerous courts, both in this district and throughout the country, have approved orderly dismissals under similar circumstances, where the debtor lacks the requisite financial ability to confirm a chapter 11 plan and/or where the costs associated with plan confirmation would eliminate the possibility of a meaningful creditor recovery. See In re Levitz Home Furnishings, Inc., Case No. 05-45189, Docket No. 1167 (Bankr. S.D.N.Y. 2008); In re Princeton Ski Shop, Inc., Case No. 07-26206, Docket No. 546 (Bankr. D.N.J. 2008); In re Harvey Elecs., Inc., Case No. 07-14051, Docket No. 177 (Bankr. S.D.N.Y. 2008); In re Scient, Inc., et al., Case No. 02-13455, Docket No. 821 (Bankr. S.D.N.Y. 2006); In re CSI, Inc., et al., Case No. 01-12923, Docket No. 284 (Bankr. S.D.N.Y.2006); In re Dawahare's of Lexington, LLC, Case No. 08-51381, Docket No. 316 (Bankr. E.D. Ky 2008); In re New Weathervane Retail Co., 04-116349, Docket No. 566 (Bankr. D. Del. 2005); In re Blades Board & Skate, LLC, Case No. 03-48818, Docket No. 126 (Bankr. D.N.J. 2004); In re KB Toys, Inc., Case No. 08-13269, Docket No. 914 Bankr. D. Del. 2009); In re CFM U.S. Corporation, et. al., Case No. 08-10668, Docket No. 1097 (Bankr. D. Del. 2009); In re Wickes Holdings, LLC, et al., Case No. 08-10212, Docket No. 1418 (Bankr. D. Del. 2009); In re Bag Liquidation, Ltd., Case No. 08-32096, Docket No. 688 (Bankr. N.D. Tex. 2009).

**B.    Dismissal of the Case Under Section 305(a)(l) of the Bankruptcy Code**

46.     Alternatively, cause exists to dismiss this chapter 11 case pursuant to section 305(a) of the Bankruptcy Code, which provides, in pertinent part:

> (a)    The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if-

15

> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension;

11 U.S.C. § 305(a).

47. In applying section 305(a), courts have considered a wide range of factors, including, but not limited to:

> (i) economy and efficiency of administration;
>
> (ii) whether federal proceedings are necessary to reach a just and equitable solution;
>
> (iii) whether there is an alternative means of achieving an equitable distribution of assets; and
>
> (iv) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves the interests in the case.

See In re Crown Village Farm, LLC, Case No. 09-11522 (KG), U.S. Bankr. LEXIS at *24 (Bankr. D. Del. June 12, 2009) (enumerating section 305(a) factors and denying motion only because dismissal or abstention would have a deleterious effect on the administration of the debtor's chapter 11 case "which would languish while core issues were tried elsewhere"); see also In re Mazzocone, 200 B.R. 568, 575 (E.D. Pa. 1996). However, "the exact factors to be considered and the weight to be given to each of them is highly sensitive to the facts of each individual case." Mazzocone, 200 B.R. at 575.

48. Dismissal of this case is warranted under section 305(a)(l) for the same reasons that "cause" exists to dismiss these cases pursuant to section 1112(b); dismissal of the case will effectuate an efficient administration of this estate and represents the least expensive and most equitable alternative for the remaining assets to be distributed. Indeed, other courts have approved dismissals similar to that proposed

16

by the instant Motion under section 305(a) of the Bankruptcy Code.  See, e.g., In re Scient, Inc., et al., Case No. 02-13455 (AJG), Docket No. 821 (Bankr. S.D.N.Y. 2006); In re CSI, Inc., et al., Case No. 01-12923 (REG), Docket No. 284 (Bankr. S.D.N.Y. 2006).

49.    The Motion represents the only logical and expedient outcome for this chapter 11 case.  Authorizing the distributions contemplated herein and allowing the dismissal of this chapter 11 case furthers the efficient administration of the Debtor's estate and maximizes value.

## NOTICE

50.    Notice of this Motion has been given to:   (i) the Office of the United States Trustee; (ii) all creditors, and (iii) those parties having filed notices of appearance.  The Debtor respectfully submits that no other or further notice is required.

## NO PRIOR REQUEST

51.    No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form annexed hereto, approving the distributions, and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
      June 5, 2015

                                        KLESTADT WINTERS JURELLER
                                        SOUTHARD & STEVENS, LLP

                                By: _/s/ Tracy L. Klestadt_
                                      Tracy L. Klestadt
                                      Brendan M. Scott
                                      570 Seventh Avenue, 17th Floor
                                      New York, New York 10018
                                      Telephone: (212) 972-3000
                                      Facsimile: (212) 972-2245

                                      *Attorneys for the Debtor and Debtor*
                                      *in Possession*